FILED & ENTERED

AUG 31 2021

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY sumlin    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

In re:

Edmund Lincoln Anderson,

Debtor(s)

Case No.:    2:20-bk-11333-NB

Chapter:    11

**MEMORANDUM DECISION OVERRULING DEBTOR'S OBJECTION TO CLAIM NUMBER 5 OF THE INTERNAL REVENUE SERVICE**

Trial:
Date: August 4, 2021
Time: 10:00 a.m.
Place: Courtroom 1545
   255 E. Temple Street
   Los Angeles, CA 90012

At the time and place set forth in the caption above, this Court held a trial on Debtor's Objection (the "Objection") to Claim Number 5 (the "IRS Claim") filed by the Department of the Treasury - Internal Revenue Service (the "IRS") (dkt. 155). Direct testimony was taken by declaration, subject to live cross-examination, redirect, etc.[1]

---

[1] Unless the context suggests otherwise, a "chapter" or "section" ("§") refers to the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Code"), a "Rule" means the Federal Rules of Bankruptcy Procedure or other federal or local rule, and other terms have the meanings provided in the Code, Rules, and the parties' filed papers.

## 1. BACKGROUND

In the early to mid 2000's, Debtor went into business with an associate, Mr. Kenneth Berry, aka Ken Berrydane ("Mr. Berry"). Debtor and Mr. Berry partnered together to develop the property located at 4626 Presidio Drive, Los Angeles, California ("Presidio Property").

In 2006, the First Horizon Home Loan Corporation ("First Horizon") issued a second mortgage loan secured against the Presidio Property in the amount of $1,000,000.00 ("First Horizon Loan"). Soon after, the financial crisis of the late 2000's struck, and First Horizon foreclosed on its interest in the Presidio Property. First Horizon sold the Presidio Property at auction and discharged Debtor's obligations on the First Horizon Loan.

The IRS asserts that this discharged obligation constitutes "cancellation of indebtedness" income under the Internal Revenue Code. Debtor denies any such liability, based on his allegation that he was unaware of this loan and that Berry fraudulently applied for and obtained the loan in Debtor's name without Debtor's knowledge and retained all of the loan proceeds.

## 2. JURISDICTION, AUTHORITY, AND VENUE

This Bankruptcy Court has jurisdiction, and venue is proper, under 28 U.S.C. §§ 1334 and 1408. This Bankruptcy Court has the authority to enter a final judgment or order under 28 U.S.C. § 157(b)(2)(B) and 11 U.S.C. § 505. *See generally Stern v. Marshall*, 131 S. Ct. 2594 (2011); *In re Deitz*, 469 B.R. 11 (9th Cir. BAP 2012) (discussing *Stern*); *In re AWTR Liquidation, Inc.*, 547 B.R. 831 (Bankr. C.D. Cal. 2016) (same). Alternatively, the parties have expressly (dkt. 382, p. 7:3-5) or implicitly consented to this Bankruptcy Court's entry of a final judgment or order. *See Wellness Intern. Network, Ltd. v. Sharif*, 135 S.Ct. 1932 (2015); *and see In re Pringle*, 495 B.R. 447 (9th Cir. BAP 2013). *See also* Rules 7008 & 7012(b) (Fed. R. Bankr. P.); LBR 9013-1(c)(5)&(f)(3).

## 3. DISCUSSION

### a. Legal Standards

Debtor's Objection seeks a determination of tax liability; this Court has authority to enter a final judgment on such determinations pursuant to § 505.  As for claim objections, the governing statute and rule provide that if a party objects to a proof of claim:

> the court, after notice and a hearing, shall determine the amount of such claim . . . and shall allow such claim in such amount, except to the extent that—
> * * *
> such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured [§ 502(b)(1)],

and that "a proof of claim executed and filed in accordance with [the Rules] shall constitute prima facie evidence of the validity of the amount of the claim."  Rule 3001(f).

### b. As the Objecting Party, Debtor Has the Burden of Proof

The IRS Claim is prima facie evidence of the validity and amount of the claim because it includes the information and documentation required by the Rules.  *See* Rule 3001(c), (d) & (f).  The IRS asserts a lien against Debtor's property for taxes due on cancelled indebtedness.  That cancelled indebtedness was listed on a Form 1099-C First Horizon prepared for Debtor and filed with the IRS.  IRS Trial Brief (dkt. 400), p. 3:17–21.  The IRS alleges that Debtor failed to include this cancelled indebtedness in his gross income on his 2009 tax returns.  *Id.*  Attached to the IRS Claim is evidence of the calculation of its claim and perfection of its lien.  Under applicable bankruptcy law, that is sufficient to constitute prima facie evidence of the validity and amount of the claim.  *See* Rule 3001(f).

In any event, even if there were no presumption in favor of the IRS, the burden would be on Debtor to establish one of the statutory grounds for disallowance.  *See Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S. 443, 449 (2007); In re *Campbell*, 336 B.R. 430, 436 (9th Cir. BAP 2005); *In re Heath*, 331 B.R. 424, 435 (9th Cir. BAP 2005).

In addition, because the IRS Claim is a tax claim, this Court must apply the burden shifting rubric applicable under the relevant tax laws. *In re Olshan*, 356 F.3d 1078, 1084 (9th Cir. 2004) (quoting *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20–21 (2000)). Under this standard, the IRS Claim is entitled to a presumption of correctness because it is based on an IRS deficiency determination, which itself relies on the 1099-C issued to Debtor by First Horizon. Brown Decl. (dkt. 387), 2:8–22; IRS Trial Ex. 111; IRS Trial Ex. 113; *and compare* 26 U.S.C. § 6201(d) (limited circumstances in which IRS has the burden of proof); *see also Palmer v. United States IRS*, 116 F.3d 1309, 1312 (9th Cir. 1997) (citing *United States v. Stonehill*, 702 F.2d 1288, 1293 (9th Cir. 1983)) ("[the IRS's] deficiency determinations and assessments for unpaid taxes are normally entitled to a presumption of correctness so long as they are supported by a minimal factual foundation.").

To overcome this presumption of correctness and shift the burden back to the IRS, Debtor bears the burden of producing sufficient evidence that the deficiency determination is incorrect, *Palmer*, 116 F.3d at 1312, or alternatively sufficient evidence that the determination is "arbitrary, excessive, or without foundation." *Id.* The burden of production for an objector to a tax claim is significantly higher than the burden applicable to other claim objections. *See Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000) ("To defeat the claim, the objector must come forward with sufficient evidence and show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves. . . . If the Objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.") (citations and internal quotation marks omitted).

In sum, there are multiple alternative reasons why Debtor has the burden of proof. That is a particularly difficult burden in view of the evidentiary presumptions against Debtor's allegations. Moreover, even without either the burden of proof or the

1 evidentiary presumptions, there are some inherent problems with Debtor's allegations
2 that make them not credible.

### c. Debtor's Testimony About Not Receiving Multiple Mailings is not Credible, Especially in View of the Presumption that Properly Addressed Mail is Received

Debtor testified that he did not receive copies of the First Horizon Loan documents mailed to him at 1932 Rochester Circle, Los Angeles, CA 90018 (the "Rochester" address). Debtor Direct Test. (dkt. 404), PDF pp. 8:9–11, 9:11–12. At the very least, those documents would have included copies of deeds of trust that had his name and the Rochester address listed at the top as the "when recorded mail to" name and address. In addition, First Horizon itself presumably would have used Debtor's name and address for any copies of loan documents and all the other standard loan communications, both at the inception of the First Horizon Loan and thereafter, because Debtor's name and the Rochester address were included in the First Horizon Loan documents. Debtor's Trial Ex. 2, PDF pp. 27–39; Debtor's Trial Ex. 8, PDF p. 3.

Debtor also testified that he did not receive the taxpayer copy of the 1099-C or the 1098 Forms mailed to him by First Horizon at the Rochester address. Debtor Direct Test. (dkt. 404), PDF pp. 8:9–11, 9:11–12; Debtor's Trial Ex. 12; Debtor's Trial Ex. 13; IRS Trial Ex. 111. Debtor also testified that he did not receive follow-up notices mailed to him by the IRS at 1964 Saxon Valley Circle, N.E., Atlanta, GA (the "Saxon" address). Debtor Direct Test. (dkt. 404), PDF p. 9:15–19; Brown Decl. (dkt. 387), p. 3:7–25; IRS Trial Ex. 112.

As a preliminary matter, neither party has addressed whether there are any evidentiary presumptions, but in this Court's view Debtor's testimony regarding his nonreceipt of all of the aforementioned documents would have to overcome the presumption that properly addressed mail is received. True, the documents at issue do not include certificates of service sworn under penalty of perjury; but, both as to the deeds recorded with the county registrar and as to the communications to Debtor from

the IRS, there is a presumption that government officials have properly performed their duties, which would include mailing the documents to Debtor, absent clear evidence to the contrary. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004) (presumption of officials doing their duty); *Hagner v. United States*, 285 U.S. 427, 430 (1932) (presumption that properly addressed mail is received); *In re A&P,* 618 B.R. 57, 67-68 (S.D.N.Y 2020) (same). Debtor has not rebutted these presumptions.

Alternatively, assuming for the sake of discussion that no such evidentiary presumption applies, it is difficult as a matter of common sense to believe that Debtor did not receive any of those multiple pieces of mail, sent by more than one party, at various times, to two different addresses. Debtor's attempted explanations are as follows.

With respect to the Rochester address, Debtor testified that, although that was the principal family property and a place that he had used as a business address, there was construction work going on, he did not reside there, and he did not receive the loan documents. Debtor Direct Test. (dkt. 404), PDF p. 8:21–26. As for mail addressed to the Saxon address, Debtor testified that he did not receive the IRS communications mailed there because he was living part time in Los Angeles, and on cross-examination he implied that whatever forwarding arrangements he had put in place had failed, or else the mail was stolen, which he testified had happened before at the Saxon address. *See, e.g.,* Debtor Direct Test. (dkt. 404), PDF pp. 8:9–20, 9:11–20.

This Court is not persuaded by those allegations. On their face they fail to establish that Debtor more likely than not (*i.e.,* by a preponderance of the evidence) failed to receive any notice about the First Horizon Loan. Moreover, if Debtor's testimony were accurate, and he really were failing to receive all of this mail, one would expect that Debtor also was not receiving other mail that he was expecting, such as monthly bills, personal letters, other tax documents, etc. But there is none of the corroborating evidence of such missing mail that one would expect. For example, there was no evidence that Debtor wrote letters or emails to the postal service, credit card

companies, the IRS, and others to complain about the missing mail, and to obtain duplicate copies of bills or other documents.

Debtor's strongest argument is that, if he had received the First Horizon 1098 Forms, he would have claimed deductions for interest payments on his tax returns, but he did not.  See Debtor's Trial Exs. 3, 12 and 13.  Yet there is considerable evidence that Debtor was aware of the loan (as described above) and, in fact, signed the loan documents (as described below); so the most likely explanation is that the loan proceeds were used in various joint ventures with Mr. Berry, and Debtor relied on Mr. Berry to make the best use of tax deductions by allocating them to whatever joint venture could benefit from them the most.

In any event, Debtor's testimony regarding his ignorance of the loan is simply not credible and the weight of the evidence overwhelmingly supports a finding that Debtor was aware of the loan via one or more of the documents. One final piece of evidence further supports this finding.

Debtor testified that he never received the 1099-C and that he first learned of the IRS communications through documentation received in connection with litigation of the Objection to Claim of the IRS.  Debtor Direct Test. (dkt. 404), PDF p. 9:11–20.  At trial the IRS cross-examined Debtor on his claimed lack of knowledge.  During that examination, the IRS presented portions of Debtor's 2008 bankruptcy petition filed in Georgia which included a creditor matrix, showing that First Horizon appeared on that matrix.  IRS Trial Ex. 146, p. 9.  Debtor offered no explanation why he would have included First Horizon on that matrix if he was ignorant of the First Horizon Loan.

For all of the foregoing reasons, this Court is not persuaded that Debtor was wholly unaware of the First Horizon loan until this bankruptcy case.  In other words, supposing for the sake of discussion that Debtor did not know about the loan before it was funded (but see below), this Court finds that he received copies of the loan documents immediately thereafter, as well as other documents from First Horizon and the IRS.  This Court also finds that any one of those documents should have alerted him

both to the existence of the loan and, later, to the asserted cancellation of indebtedness income.  Debtor offers no explanation or evidence about why he failed to take remedial steps at any of those times, if the First Horizon Loan actually had been obtained without Debtor's knowledge, as he asserts.  Therefore, this Court finds that Debtor was fully aware of the First Horizon Loan, which undermines his theory that he should not be liable for any cancellation of debt income because that loan was incurred without his knowledge.

### d. The Numerous Transfers of the Presidio Property do Nothing to Support Debtor's Allegations

Debtor claims to have been ignorant of the numerous grant deeds for the Presidio Property after his purchase of the property in late 2003, and he implied in his testimony that these transfers evinced a fraud perpetrated against Debtor by Mr. Berry.  Debtor Direct Test. (dkt. 404), PDF p. 3:15–4:21.  The evidence Debtor presented to support these assertions does little to establish that such a scheme existed.

The deeds show that between 2003 and 2006, the property was transferred at least six times to and from Innovative Professional Management, Eddie Rochester Anderson Foundation, Inc., Mr. Berry, and Debtor.  Debtor's Trial Ex. 1, at Bates Stamp pp. 3–19.  At all times, title to the Presidio Property was purportedly held by at least one of these entities, with some deeds showing title vested in two of the entities as joint tenants.  *Id.*

Debtor claims that he only recently learned of these transfers.  Debtor Direct Test. (dkt. 404), PDF pp. 3:15–17.  But Debtor has not addressed the fact that two of these grant deeds, both dated October 26, 2006, were addressed to him at the Rochester address.   Debtor's Trial Ex. 1, at Bates Stamp pp. 3–19.

At best, the deeds for these frequent transfers appear to have been prepared carelessly.  More likely, the transfers were intentionally structured back and forth among Debtor, Mr. Berry, and their affiliate as part of the multiple, complex joint ventures in which Debtor testified he was engaged with Mr. Berry.  Whether Mr. Berry did this for

his own personal benefit or in coordination with Debtor is unknown. In any event, based on the record presented, this Court is not persuaded that Debtor was wholly unaware of the multiple transfers of the Presidio Property, nor that such transfers support Debtor's allegation that Mr. Berry forged Debtor's signature and obtained the First Horizon Loan without Debtor's knowledge.

In sum, this Court finds that Debtor either obtained the loan himself (the most likely scenario) or, conceivably, Mr. Berry obtained the loan (by signing Debtor's name, either with or without Debtor's consent – although that is far less likely because of the notarization described below) and Debtor did not object because he thought the proceeds and any tax benefits were being used in their joint ventures. Either way, Debtor's story that he lacked any knowledge of the First Horizon Loan does not hold up in the face of the numerous times he should have received notice of that loan by mail.

### e. Alternatively, Debtor's Testimony is Not Credible in View of the Notarization of his Signature on the Loan Documents and the Presumption of Regularity in the Performance of Official Duties

Debtor testified that, although the signatures on the subject loan document are notarized, they were not his signatures. On the one hand, in support of that allegation, the signatures on the loan documents does vary somewhat from some other examples of Debtor's signature; the notary was not present at trial to confirm her notarization; and one of the loan documents included a checked-box representing that Debtor is "White" (Caucasian), which he is not. *See* Debtor's Trial Ex. 8, Bates Stamp p. 5 (listing Debtor as "White"). *Compare, e.g.*, Debtor's Trial Ex. 2 at Bates Stamp pp. 30-37 (Debtor's signatures on loan documents), *with* IRS Trial Ex. 136 (somewhat different signature on 2006 federal tax return), *and* Ex. 137 p. 8 (somewhat different signature on 2018 bankruptcy petition, Case No. 2:18-bk-20990-SK, Cent. Dist. Cal.), *and* Debtor's Trial Ex. 8 at Bates Stamp p. 114 (top right corner) (signature on contractor agreement).

On the other hand, no handwriting expert was presented; in this Court's experience it is not uncommon for an individual's signature to vary somewhat; and it is

not uncommon for loan documents to have minor errors (particularly when, as in this instance, the loan documents reflect that the document at issue was prepared based on a telephonic interview).  Debtor's Trial Ex. 8, Bates Stamp p. 5 ("This application was taken by: … Telephone").  Even without any evidentiary presumption, Debtor's flat denial that he signed the Horizon Loan Documents is not enough to make it more likely than not that his signature was forged (again, a preponderance of the evidence standard).  In other words, this Court does not believe that Debtor's signature was forged.

In addition, an evidentiary presumption cuts against Debtor's testimony.  Again, neither party has briefed this issue, although the pretrial stipulation and order provides that one of the legal issues to be determined is the IRS's assertion that the notarized documents that Debtor challenges "are afforded a presumption of regularity, and [Debtor] must offer 'clear evidence' that this presumption should not apply."  Pretrial Stip. & Order (dkt. 382), pp. 7:28-8:2.  This Court's own research confirms the IRS's assertion.

Debtor implied in his testimony that Beverly Hysell, a notary on some of the deeds transferring the Presidio Property, fraudulently attested to Debtor's appearance before her to countersign a deed for a transfer of the property from Mr. Berry and Debtor as co-owners to Debtor outright.  Debtor Direct Test. (dkt. 404), PDF p. 5:6–16.

As noted above, Federal courts recognize a presumption of regularity, wherein a government official is presumed to have properly performed their duties absent clear evidence to the contrary.  *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174-75 (2004) ("clear evidence" usually required to overcome presumption of regularity).  Notaries public performing their duties have been entitled to this presumption in their capacity as government officials.  *See In re Big River Grain, Inc.*, 718 F.2d 968, 971 (9th Cir. 1983).

Debtor asserts that he has never appeared before Ms. Hysell and that he was unable to obtain a copy of Ms. Hysell's notary book which was supposed to have been

-10-

returned to the county records office because she is no longer a notary public. Debtor Direct Test. (dkt. 404), PDF p. 5:6–16. But Debtor's contentions do not rise to the level of "clear" evidence that Ms. Hysell improperly performed her duties. Put differently, the absence of evidence to corroborate the notarization does not amount to "clear" evidence that the notarization was false.

Moreover, the search Debtor requested for Ms. Hysell's records included journals surrendered to the Los Angeles Office of the County Clerk between January 1, 2008 and March 4, 2021. Debtor's Trial Ex. 14. But the deeds in question were executed in 2006 and bear a notary stamp which states that Ms. Hysell's commission expires on November 17, 2006. Debtor's Trial Ex. 1, PDF pp. 14–19. So there is a gap in Debtor's evidence which, in this Court's belief, leaves open the possibility that Ms. Hysell submitted her journals prior to January 1, 2008 if her commission had expired and not been renewed prior to this date.

Because Debtor's speculation that Ms. Hysell did not perform her duties properly is not supported by clear evidence, this Court must presume that Ms. Hysell properly performed her duties. In other words, despite Debtor's protestations that he did not sign the loan documents, he has not overcome the evidence that he did so, especially after applying the evidentiary presumption in favor of notarizations.

Alternatively, supposing for the sake of discussion that Mr. Berry forged Debtor's signature, that is not the same as establishing that Debtor was ignorant of the loan and did not benefit from it. To the contrary, there is circumstantial evidence that Debtor did benefit, at least in part, from the First Horizon Loan.

True, there was no evidence about what happened to the cash from the First Horizon Loan. But Debtor's own testimony about the complexity of the transactions that he let Mr. Berry orchestrate in Debtor's and Mr. Berry's name, the deeds back and forth, and the lack of recordkeeping (as described above and below), all strongly suggest that Debtor's overall enterprises with Mr. Berry benefitted from the proceeds of the loan. In other words, even supposing for the sake of discussion that Debtor's signature were

forged, that does not mean that Debtor did not benefit from the loan, and owes no taxes for discharge of the loan debt.

### f. Debtor's Testimony Regarding his Bank Records is Unreliable

The parties do not dispute that there is no evidence on the record of who received the proceeds of the First Horizon loan, whether it be Debtor, Mr. Berry, or some joint venture or affiliate of theirs. Debtor testified that he provided the Court with bank statements for the entirety of 2006 through January 2007 for all of his bank accounts, and those bank statements do not appear to reflect any deposits that would correspond to the First Horizon Loan. Debtor Direct Test. (dkt. 404), PDF p.8:4–7. The records submitted included statements for three Bank of America accounts, one ending in 5608, one ending in 7731, and one ending in 7732. Debtor's Trial Ex. 9.

If this Court were persuaded to assume that these three accounts have been Debtor's only bank accounts, and to assume that any proceeds from the First Horizon Loan would have been deposited into one of those accounts, then this evidence would support Debtor's claim that he never received any funds from the First Horizon Loan. *See id.* But this Court cannot make such assumptions, and in any event Debtor's testimony at trial and documents presented by the IRS on cross-examination undermine any such assumptions.

On cross-examination, the IRS asked Debtor to confirm that the three accounts presented in Debtor's Exhibit 9 were Debtor's only bank accounts at the time, which Debtor confirmed. But the IRS presented evidence of Debtor owning at least one other Bank of America account ending in 5783, which account was listed on Debtor's monthly operating reports for a 2008 bankruptcy case filed in Georgia. IRS Trial Ex. 140, p. 7.

This discrepancy undermines the credibility of Debtor's direct testimony. His lack of accurate recordkeeping does not prove that he or his joint ventures with Mr. Berry did not receive the proceeds of the First Horizon Loan. In other words, this Court finds that Debtor's testimony and bank records are not sufficient to rebut the presumptive correctness of the IRS's deficiency determination.

### 4. CONCLUSION

For the reasons explained above, this Court is not persuaded by Debtor's arguments that the IRS Claim is unenforceable against him due to his not being aware of the First Horizon loan or receiving any proceeds from that loan. Debtor's Objection to Claim of the IRS is overruled.

###

Date: August 31, 2021

Neil W. Bason
United States Bankruptcy Judge